IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF **Black iPhone donning black case with an attached lanyard** **(SUBJECT DEVICE)** This device is currently located at the Bureau of Alcohol, Tobacco, Firearms and Explosives Richmond III Field Office, 600 E. Main Street, Suite 1401, Richmond, VA 23219. | Case No.  3:21-SW-135 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Rodney D Ward, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property: Black iPhone donning a black case with attached lanyard, (hereinafter the "SUBJECT DEVICE"), more fully described in Attachment A—which is currently in law enforcement possession, and the extraction from that property of electronically stored information, described in Attachment B, which is incorporated by reference.

2. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), and have been since September 2014.  Your affiant is a graduate of the Virginia State Police Basic Law Enforcement Academy and has served as a member of the Department of State Police for nineteen (19) years. As a sworn police officer in the Commonwealth oof Virginia, your affiant was responsible for investigating traffic accidents,

robbery, malicious wounding, burglary, firearms, illegal narcotics and assaults that occurred in the Commonwealth of Virginia. Your affiant has led and/or participated in numerous felony criminal investigations/arrests in the Commonwealth of Virginia, and the Federal Eastern District of Virginia. These cases have included narcotics and/or firearms violations, which are included in Titles 18 and 21 of the United States Code. Your affiant has authored several search and seizure and arrest warrants in connection with these investigations.

3. The training provided at Virginia State Police Training Academy included extensive coursework and practical exercises in Constitutional Law, Criminal Law, Fourth Amendment Law, State and Federal Court Procedures, Conspiracies and Parties thereto, Self-Incrimination, and Physical Evidence.

4. The facts in this affidavit come from my personal observations, my training and experience and information obtained from other agents, officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of 21 U.S.C. §§ 841(a)(1) and 846, possession with intent to distribute heroin and conspiracy to possess with the intent to distribute has been committed by Corey YOUNG and that a search of the device described in Attachment A will contain evidence of this crime, as described in Attachment B.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched is: Black iPhone donning a black case with an attached lanyard (the SUBJECT DEVICE). This device is currently located at the Bureau of Alcohol, Tobacco, Firearms and Explosives Richmond III Field Office, 600 E. Main Street, Suite

1401, Richmond, VA 23219. The applied-for warrant requests authorization to conduct forensic examinations on the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT STATUTORY PROVISIONS

6. The relevant statutory provisions are 21 U.S.C. §§ 841(a)(1) and 846, possession with intent to distribute and distribute controlled substances and conspiracy to possess with the intent to distribute controlled substances.

## TECHNICAL TERMS

7. Based on my training and experience, I use the following technical terms to convey the following meanings:

- **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also

include global positioning system ("GPS") technology for determining the location of the device.

- **Digital camera**:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

- **Portable media player**:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock or games.

- **IP Address**: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

    Every computer connected to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

- **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8. Based on my training, experience and research, I know the SUBJECT DEVICE to have capabilities that allows it to: serve as a wireless telephone, digital camera, portable music/media player, connect to the internet, send and receive emails and/or send and receive text messages. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## PROBABLE CAUSE

9. On May 20, 2021, Richmond Police Department (RPD) detectives received information from a Confidential Informant (CI) that a known narcotics distributor named Corey YOUNG (B/M, DOB: 10/26/1980, SSN: 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) was in the 4000 block of Midlothian Turnpike, Richmond, Virginia (also known as the Belt Atlantic Apartments). The CI provided a description of YOUNG's clothes, to include the vehicle YOUNG was operating. RPD Detectives set up surveillance in the immediate area where YOUNG was seen. RPD Detective observed YOUNG engaged with what they believed, based on their training and experience, to

be hand to hand narcotics transactions and shortly afterwards return to the vehicle YOUNG was operating.

10.   Based on the aforementioned activity, RPD Detectives approached YOUNG and placed him into investigative detention.  An RPD K-9 Officer arrived and deployed her service issued K-9 on the exterior of the vehicle YOUNG was operating. The K-9 indicated to the handler a positive alert for the presence of illegal narcotics on YOUNG and showed interest in the vehicle that Young was operating.

11.   Based on the K-9 alert to YOUNG and suspected illegal narcotics activity of YOUNG observed by the surveilling RPD Detective, RPD Detectives conducted a search of the before mentioned vehicle YOUNG was observed in and his person.   During the search of the vehicle (Gray KIA four door bearing a Colorado Registration of AZG A34), Detectives discovered suspected "crack cocaine" in the driver's side door.  In the center console Detectives recovered suboxone strips, suspected "heroin." A loaded Glock 22 semi-automatic pistol was recovered between the driver's seat and the center console.  In the rear seat of the vehicle, a book bag containing additional narcotics and ammunition were recovered. RPD Detectives also recovered the SUBJECT DEVICE in the front passenger seat of the above-mentioned vehicle.

12.   Prior to May 20, 2021, YOUNG had been convicted of a crime punishable by a term exceeding one year and signed a probation and parole form noting that he could not possess firearms and ammunition.

13.   The suspected narcotics seized from YOUNG were analyzed by the Commonwealth of Virginia Department of Forensic Science.  The suspected narcotics were confirmed to be approximately 16 grams of cocaine and 3 grams of fentanyl, to include packaging.

14. Based on the quantity of illegal narcotics discovered in YOUNG's vehicle and the suspected hand to hand narcotics transactions observed by the RPD Detective during surveillance, such activity is consistent with individuals actively engaged in the distribution of illegal narcotics.

15. In my training and experience, I have come to understand that individuals in the drug trade and firearm traffickers will often use their cell phones to communicate to potential customers and suppliers through various social media platforms such as Facebook, Snapchat, and Instagram to let them know that they have product to sell or are interested in purchasing. I have also come to understand that narcotics traffickers, firearm traffickers and purchasers will utilize cell phones to further their drug trafficking by setting up transactions through calls, text messages, and Instant Messages on Social Media platforms. Drug traffickers also frequently keep owe sheets of transactions, customer contact information, source of supply contact information, and photographs of drugs and guns on their phones.

16. The above mentioned event occurred within the Eastern District of Virginia and the firearm was manufactured outside of the Commonwealth of Virginia.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. Based on my knowledge, training and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on electronic devices. This information can sometimes be recovered with forensics tools.

18. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of drug trafficking crimes as described herein, but also may provide forensic evidence

that establishes how the Device was used, the purpose of its use, who used it and when. There is probable cause to believe that this forensic electronic evidence might be found on the SUBJECT DEVICE because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium, but has since been deleted or edited or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them and when.

d. The process of identifying the exact electronically stored information on storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks only permission to examine the SUBJECT DEVICE that are already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### SPECIFICITY OF SEARCH WARRANT RETURN AND NOTICE REGARDING INITIATION OF FORENSIC EXAMINATION

21. Consistent with the Court's current policy, the search warrant return will list the model and/or serial number of the SUBJECT DEVICE and include a general description of any and all associated peripheral equipment that has been seized.

### CONCLUSION

22.     I have probable cause to believe that evidence exists on the SUBJECT DEVICE that Corey YOUNG committed a violation of 21 U.S.C. §§ 841(a)(1) and 846, possession with intent to distribute controlled substances and conspiracy to possess with the intent to distribute. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

RODNEY WARD (Affiliate)
Digitally signed by RODNEY WARD (Affiliate)
Date: 2021.08.25 16:33:01 -04'00'

Rodney D. Ward
Task Force Officer, ATF

Subscribed and sworn to before me on August 26, 2021.

_____/s/ MRC_____
Mark R. Colombell
United States Magistrate Judge

# ATTACHMENT A

The property to be searched is: **Black iPhone encased in a black case with attached lanyard.** This device is currently located at the Bureau of Alcohol, Tobacco, Firearms and Explosives Richmond III Field Office, 600 E. Main Street, Suite 1401, Richmond, VA 23219.

This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B, which is incorporated by reference.

## ATTACHMENT B

1. All records in the SUBJECT DEVICE, described in Attachment A, that relate to violation of 21 U.S.C. §§ 841(a)(1) and 846, possession with intent to distribute controlled substances and conspiracy to possess with the intent to distribute controlled substances, involving Corey Young, including:

   a. Notes, ledgers, messages and similar records relating to the transportation, ordering, purchasing of controlled substances.

   b. Address books, phone books, applications ("Apps") and similar records reflecting names, addresses, telephone numbers and other contact or identification data.

   c. Applications and records relating to drug and/or firearm purchasing and expenditures of money and wealth, including bank records.

   d. Calendars, applications and other records referencing meetings, schedules and interstate and foreign travel.

   e. Digital photographs, videos or audio recordings of confederates, assets or controlled substances, and specific locations connected to the user of the phone.

   f. Stored communications, including text messages, MMS messages and voicemails.

   g. Any subscriber or owner information for the cellular telephones.

   h. Any cellular telephone records and telephone books or lists or receipts relating to the acquisition and purchase of cellular telephones or minutes purchased or applied to cellular telephones.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of devices or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2.      Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.